## J. H. O'NEILL v. H. S. DOUTHITT *et al.*

VENDOR AND VENDEE—*Action for Purchase-Money—Title of Vendor—Evidence.* Where the purchaser of land refuses to accept a warranty deed therefor, and brings an action to recover the purchase-money paid, upon the grounds that certain mortgages on said land had not been properly released of record, and that no patent was of record for a part of said land; and where it further appears that the receiver's final receipt is of record, and a letter is shown from the register of the land office showing that the patent has issued and been delivered to the patentee: *Held*, Such vendor has a *prima facie* legal as well as equitable title to said land; and *further held*, that a receipt indorsed upon the original mortgage, signed by the attorney of such mortgagee, is *prima facie* a valid release of such mortgage, although no authority appears of record authorizing such attorney to make such release.

### *Error from Elk District Court.*

ACTION brought by *Douthitt* and another against *O'Neill*, to recover $1,000 by them paid to him as a part of the purchase-price of certain lands to be conveyed by defendant to plaintiffs by a good and sufficient warranty deed; and also to recover interest on $350 thereof from December 22, 1883, at the rate of 7 per cent. per annum, and interest at the same rate on $650 thereof from January 20, 1884. Trial at the October term, 1886. The jury found for the plaintiffs, and assessed the amount of their recovery at $1,175. The defendant filed a motion for a new trial, which the court denied. Judgment on the verdict for the plaintiffs. The defendant brings the case here. The opinion states the material facts.

*Nichols & Jackson,* and *Brush & Carr,* for plaintiff in error.

*Scott & White,* and *T. J. Hudson,* for defendants in error.

Opinion by CLOGSTON, C.: In December, 1883, O'Neill sold to Douthitt & Wyatt a certain tract of land in Elk county, Kansas, for the sum of $7,000, by a written contract, the terms of which were that they were to pay O'Neill $350 cash down; $650 on January 20, 1884; and $6,000 on March 1, 1884,

at which time he was to convey the land to them by a good and sufficient warranty deed, with the usual covenants, free and clear of incumbrances, and in default of any payment, all payments made to be forfeited. O'Neill represented that he was the owner in fee simple of the property, and had the right to convey the same. At the same time, by a parol agreement, O'Neill was to furnish an abstract of the title to the land. It is admitted that the first two payments on this contract were made, and that an abstract was furnished, and on the 1st day of March, 1884, a good and sufficient deed was duly prepared, conveying the land to Douthitt & Wyatt, and was duly tendered to them, which deed they refused to accept, giving as a reason that the abstract failed to show a perfect title to the premises, free and clear of all incumbrances, and for that reason they refused to pay the $6,000. It is also admitted that the abstract showed that there was no patent of record from the government of the United States to the party who entered it, for 40 acres of this land. The abstract did show that the receiver's final receipt was duly recorded for the said 40 acres. In addition to this, they also objected to the title for the reason that there were of record two certain mortgages executed by O'Neill, and the abstract showed that they were released by attorneys for the mortgagees, but did not show that they were duly authorized by power of attorney to make such release. To meet these objections the defendant below showed that on the 1st day of March, at a meeting of the parties to complete the transaction, the quarter-section embracing this 40 acres for which no patent was of record, was entered by one Michael Ott, who afterward transferred the 40 acres in controversy to O'Neill, and the remainder of the quarter-section to John N. Bacus; that upon inquiry it was learned that the register's receipt had been turned over to Bacus, and by him lost, and for the purpose of procuring a patent for this land, Bacus made his affidavit of ownership and of the loss of the final receipt; which affidavit, with a letter requesting the patent to be sent to McHenry & Simons, at Howard, was duly forwarded to the register of the land office at Independ-

ence, Kansas, and by him returned to McHenry & Simons, with the indorsement that the patent to said land had been issued and delivered to Michael Ott, the patentee. This letter and indorsement was by the court excluded. Section 383 of the code of civil procedure is as follows:

"SEC. 383. The usual duplicate receipt of the receiver of any land office, or, if that be lost or destroyed, or beyond the reach of the party, the certificate of such receiver that the books of his office show the sale of a tract of land to a certain individual, is proof of title equivalent to a patent against all but the holder of an actual patent."

It is perhaps true that the receiver's receipt, even by this section, is only evidence of an equitable title; but if this is so, yet we think that where it is shown that a party has an equitable title, and the evidence from the United States land office that the patent has not only issued, but has been by the land-officers delivered to the patentee, from whom a chain of title is shown, it is sufficient to show not only an equitable, but a legal title to the land. The contract was to convey by a good and sufficient warranty deed, with covenants. This was done. The abstract furnished disclosed the title, less the patent; and by this letter from the register, it is shown that the patent was in the possession of the patentee. This letter, with indorsements, was of as high a character as the abstract. It is evidence to show that the title had passed from the government, and to the person to whom the original receiver's receipt was issued. We think the court erred in excluding this letter with the indorsements from the land office, and that a substantial compliance with the terms of the contract had been performed, so far as the patent for the 40 acres of this land is concerned.

As to the second objection urged to the title, that the land was not free from incumbrances, the record shows the following facts: First, a mortgage by O'Neill to Coit, and a second mortgage to Kemble. The first of these mortgages was released by a receipt on the original mortgage, signed by L. W. Keplinger, as attorney in foreclosure proceedings; the second was signed by Kemble, by G. R. Peck, attorney, with his in-

dorsement. These original mortgages bear these indorsements. The abstract furnished also showed the releases. Counsel insist that before a release to a mortgage can be made by an attorney, he must first have authority to make such release, which authority must be of record, duly acknowledged by the mortgagee. The statute provides three ways in which a mortgage can be released of record: *First*, by indorsements on the margin of the record, witnessed by the register of deeds, by the mortgagee, his attorney, assigns, or legal representatives; *second*, by a receipt indorsed on the mortgage, signed by the mortgagee, his agent, or attorney; *third*, by an independent instrument acknowledging the satisfaction of the mortgage, signed by the mortgagee, his duly-authorized attorney in fact, assignee, or legal representative, duly acknowledged. (See §§ 5 and 6 of chapter 68 of the Comp. Laws of 1885.) These sections make a distinction between an attorney of the party, as mentioned in the first two provisions, and that mentioned in the third. In the first and second it is done by "his attorney," and in the third by his "attorney in fact, duly authorized." Now if § 5, which includes the first two ways of releasing mortgages, required the attorney there mentioned to be an attorney in fact, duly authorized, then why was that language used only in § 6? There are three distinct ways of doing it, and the language is different in each of these ways. If the legislature intended that a mortgage could only be released by an attorney in fact, duly authorized, then it was not necessary to have used the language in § 6 at all. The same reference to an attorney would be sufficient as made in § 5. To construe these sections in harmony with each other, and to give each force and meaning, it will only be necessary that an attorney at law should in the first instance appear before the register and release the mortgage on the margin of the record for the mortgagee; and by the second manner, if in possession of the original mortgage, a receipt indorsed thereon, signed by him as such attorney, would be sufficient; but when not before the register in person, and not being in possession of the mortgage itself, it then becomes necessary, before he

can release a mortgage, that he be the duly-authorized attorney in fact, and this must appear of record. To give these sections any other meaning, or to construe them in any other manner, would be to strike out of § 6 that part of the qualifications, and say that "his attorney" was sufficient, and that "attorney in fact, duly authorized," means no more than the words "his attorney" in § 5. We are therefore of opinion that an attorney at law of a party may release mortgages of record as provided in § 5, and as the mortgages in question fall within this rule, it must be held that these mortgages were duly released; and from the evidence it must be presumed that the attorneys so pretending to release the mortgages, were the attorneys of the mortgagee; at least, it is *prima facie* evidence of the fact.

*Mortgages, duly released by attorney of mortgagee.*

We are therefore of the opinion that the judgment of the court below was wrong, and recommend that the same be reversed.

By the Court: It is so ordered.

All the Justices concurring.