O'Neill v. Douthitt.

---

J. H. O'NEILL v. H. S. DOUTHITT *et al.*

1. MORTGAGE — *Payment* — *Release.* Where an abstract of title shows that a mortgage on the land has been recorded, it is then necessary, in order that the abstract shall show a good and complete title, that it shall also show that the mortgage was not only released and discharged of record, but also that the person releasing or discharging the same had full and complete authority of record to do so.

44 — 40 KAS.

2. ——— *Release by Attorney in Fact — Authority.* Where a release of a mortgage is signed by the person releasing the same as "attorney in fact," and there is nothing of record showing that he had any authority to release the same, such a release is insufficient.

3. CASE, *Modified.* The decision in the case of *O'Neill v. Douthitt,* 39 Kas. 316, and 18 Pac. Rep. 199, reconsidered, and modified.

### *Motion for Rehearing.*

THE facts are stated in *O'Neill v. Douthitt,* 39 Kas. 316, and in the opinion herein, filed at the session of the court in February, 1889.

*Nichols & Jackson,* and *Brush & Carr,* for plaintiff in error.

*Scott & White,* and *T. J. Hudson,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This case was decided by this court in May, 1888, and is reported in 39 Kas. 316, and in 18 Pac. Rep. 199. A motion for a rehearing was in due time filed, and has now been presented to this court. It appears that Douthitt and Wyatt purchased certain real estate from O'Neill, for which they agreed to pay him $7,000, and O'Neill not only agreed to convey the land to Douthitt and Wyatt by a general warranty deed, conveying a perfect title, but also agreed to furnish to them an abstract of title showing such a title. Douthitt and Wyatt paid $1,000 of the purchase-price to O'Neill; and afterward O'Neill furnished to them an abstract of title, which Douthitt and Wyatt claim showed an imperfect title to the land; and for this reason they refused to pay the remainder of the purchase-price of the land, although O'Neill was willing to receive the same and to execute the warranty deed which he had agreed to execute. Afterward Douthitt and Wyatt demanded of O'Neill the return of the $1,000 which they had paid him, and he refused to return the same, and they then commenced this action against O'Neill in the district court of Elk county to recover the same back with interest, and in that court they recovered

a judgment for the same; and O'Neill, as plaintiff in error, brought the case to this court for review.

The principal question litigated in the court below was whether the abstract of title furnished by O'Neill to Douthitt and Wyatt was sufficient or not; for the court below held that if the abstract of title was insufficient—if it did not show that O'Neill had a good title to the property sold, it was immaterial whether in fact and from evidence outside of the abstract of title, and of the public records, he had a good title or not. The objections urged by Douthitt and Wyatt against the abstract of title are as follows:

1. It appears from such abstract of title that a mortgage on a portion of the land was executed by Samuel Gardner, a prior owner of the land, to G. W. Kimball, on September 27, 1872, to secure the sum of $269, and that the mortgage was recorded in the office of the register of deeds on the same day, and has never been paid, satisfied, released, or discharged, except by the following words used in the abstract of title, to wit: "The within mortgage is paid in full, this first day of September, 1874. G. W. Kimball, by Geo. R. Peck, his attorney in fact. Release indorsed on mortgage. Recorded February 9, 1875. Frank Osborn, register of deeds."

2. Another mortgage, for another portion of the land, was executed by O'Neill and wife to Charles Coit, on June 10, 1872, to secure the sum of $896.67, and recorded on the same day in the office of the register of deeds, which mortgage purports to have been released or discharged on October 6, 1874, by "L. W. Keplinger, attorney of record in foreclosure suit in Howard county district court," and "Release recorded November 25, 1874. Frank Osborn, register of deeds."

3. The abstract of title does not show that any patent for a portion of the land has ever been issued by the government of the United States, but in effect shows otherwise.

4. It appears from the abstract of title that Mrs. Eliza Ott, one of O'Neill's grantors, has never acknowledged the execution of the deed purporting to convey the land from herself and her husband to O'Neill.

On the trial of the case the aforesaid mortgages were offered to be introduced in evidence by O'Neill, but were excluded by the court. They show that the aforesaid intended releases were indorsed on the mortgages respectively, and that they are substantially the same as shown by the abstract of title. The release, however, on the mortgage released by Keplinger, was acknowledged by him before an officer. O'Neill also offered to introduce evidence to show that notwithstanding the defects in his title as shown by the abstract of title and by the public records, still that in fact and in equity he had a good title; but the court below excluded the most of the evidence, holding it to be immaterial unless O'Neill should first show that he had furnished to Douthitt and Wyatt a good and sufficient abstract of title, or had furnished evidence to them showing that he had a good and sufficient *record title*. We shall consider the foregoing objections to the abstract of title in their order.

With respect to the release purporting to have been made by Geo. R. Peck, there is nothing except as before stated showing that Geo. R. Peck was an attorney in fact of the holder of the mortgage, or an attorney at law; or that he had any authority from the holder of the mortgage to release the same; or that any suit or proceeding with reference to the mortgage had ever been instituted or was ever pending in any court of justice, or that Peck ever appeared before the register of deeds or a deputy for the purpose of entering or acknowledging satisfaction of the mortgage; or that the indorsement on the mortgage purporting to have been made by Peck was in fact made by him, or that he ever had any knowledge of the same. Is such a release sufficient? Or is the abstract of title showing such a release sufficient? We suppose that an abstract of title is a brief statement in writing made out by some person of recognized competency to make the same, or by some person whose business or vocation it is to furnish abstracts of title to real estate, containing a concise history or epitome of the title and its condition, as shown by the public records, from the inception of the title from the government

down to the date of the instrument, and perhaps also a brief statement showing what interest the person actually in possession of the property claims to have in the same.

The general policy of the law in this state is to require, as far as practicable, every interest in real estate to be evidenced, not only by a writing, but also by some public record of the county in which the real estate is situated. (See statutes of frauds and perjuries, §§ 5 and 6; statutes relating to trusts and powers, § 1; registry laws; acts relating to conveyances, to mortgages, to the records of courts, to mechanics' liens, to other liens, and to taxes.) Under our statutes and in law, as contradistinguished from equity, everything affecting real estate must be in writing, (see statutes above cited,) and every instrument in writing *affecting* real estate *may be* recorded, (conveyance act, § 19,) and to be considered as valid as against persons without actual notice, it *must be* recorded. (Conveyance act, § 21.) Now the release or discharge of a real-estate mortgage certainly *affects* real estate, or, to speak more accurately, it affects the title thereto or some interest therein. Hence a valid release of a real-estate mortgage should not only be shown by a valid writing, but it should also be shown by a valid record. Such has always been the view taken by this court. (*Burhans v. Hutcheson,* 25 Kas. 625; *Lewis v. Kirk,* 28 id. 497; *Perkins v. Matteson,* ante, p. 165; same case, 19 Pac. Rep. 633.) The statutes relating to the discharge of mortgages will be found in the act relating to mortgages, and the principal portions of such statutes read as follows:

"SEC. 5. Any mortgage of real property that has been or may hereafter be recorded may be discharged by an entry on the margin of the record thereof, signed by the mortgagee, or his attorney, assignee, or personal representative, acknowledging the satisfaction of the mortgage, in the presence of the register of deeds or his deputy, who shall subscribe the same as a witness. A mortgage may be released by a receipt indorsed thereon, signed by the mortgagee, his agent or attorney; which receipt may be entered on the margin of the record, and shall have the same force and effect as the entry on the margin of the record, as provided in this section.

"SEC. 6. Any mortgage shall also be discharged upon the record thereof by the register of deeds whenever there shall be presented to him an instrument acknowledging the satisfaction of such mortgage, executed by the mortgagee, his duly-authorized attorney in fact, assignee, or personal representative, and duly acknowledged and certified as other instruments affecting real estate." (Act relating to mortgages, Comp. Laws of 1885, chapter 68, §§ 5 and 6. See also §§ 7 and 8.)

Mr. Warvelle, in his work on Abstracts of Titles, p. 344, uses the following language:

"It will be understood, however, that the authority of the person so undertaking to make the discharge must affirmatively appear of record, for a marginal entry of satisfaction by a stranger without authority is void, although he claims to be the assignee of the mortgage and owner of the indebtedness; and where a person purporting to be the 'assignee of said mortgage' assumes to discharge same, but no assignment appears of record, this constitutes a radical defect in the title, which should be remedied before it is accepted."

It will be seen from the foregoing statutes, that various persons are authorized to discharge mortgages: *First,* The mortgagee. Now whenever the mortgage is recorded, then there is a record showing the authority of the mortgagee. *Second,* An attorney. An attorney may have special power given to him to discharge a particular mortgage, or general power to discharge all mortgages owned by the mortgagee or holder, and this power may be given by an instrument in writing, duly executed, acknowledged, and recorded; or if the attorney is an attorney at law, then he may be an *attorney of record* in a case brought in some *court of record* involving some question concerning the mortgage. In such a case, there would be a *record* showing the attorney's connection with the mortgage. *Third,* An assignee. The assignment of a mortgage may be in writing, acknowledged, and recorded. (See cases above cited, and also Warvelle on Abstracts, 344, above cited.) *Fourth,* A personal representative. This of course means an executor or administrator, and there is always a record in the probate judge's office, showing who are execu-

tors and administrators, and for whose estates they act. *Fifth*, An agent. An agent, general or special, may be created by an instrument duly executed, acknowledged, and recorded. *Sixth*, An attorney in fact. Such an attorney must of course be created by an instrument in writing duly executed, acknowledged, and recorded. (See §§ 6 and 7 of the act relating to mortgages.)

For the purposes of this case, we will suppose that where the word "attorney" is used in § 5 of the act relating to mortgages, an attorney *at law* is meant. But it certainly cannot mean an attorney at law without any record evidence of his appointment or authority. Attorneys at law are usually employed only in adversary proceedings, to conduct contests and to take charge of cases in courts where *records* are made, and are seldom employed in cases where there is *no controversy, or where all controversy has ended.* Attorneys at law are often employed in suits in *courts of record* where questions concerning mortgages are involved, but they are seldom employed merely to enter satisfaction of a mortgage where nothing is disputed. To say that any attorney at law in any county in this state may, without any evidence of any authority therefor, release and discharge any and all mortgages, recorded in any and in all counties in this state, would be to open the door wider than it should be opened. But it is not shown in this case that Geo. R. Peck was an attorney at law. Of course, outside of the case we know that there is an attorney at law in this state whose name is Geo. R. Peck, and who is a very able and distinguished lawyer; but that does not help this case. In this case the release purports to have been made by Geo. R. Peck as attorney *in fact*. Whoever indorsed this release on the mortgage of course had the mortgage in his possession, but whether the indorsement was placed on the mortgage by Geo. R. Peck or not, or whether he had any knowledge of the same or not, has not been shown. And as the release purports to have been made by an attorney *in fact*, it should have been made in accordance with the provisions of §§ 6 and 7 of the act relating

1. Mortgage; authority to release.

to mortgages; and it ought to have been made by an instru-

**2. Insufficient release.** ment acknowledged and recorded. In all this the release does not seem to have been made in accordance with the statutes.

No question concerning any statute of limitations has been raised in this case, and probably no such question could be raised with any hope of success. The abstract of title was furnished to Douthitt and Wyatt on January 7, 1884; and it appears from such abstract of title, that the mortgage purporting to have been released by Geo. R. Peck was executed and recorded on September 27, 1872, but when the debt secured by the mortgage became due, or was to become due, is not shown. From anything appearing in the abstract of title, it may not yet be due. The mortgage, however, which O'Neill offered to introduce in evidence, and which was excluded by the court, shows that the debt became due on September 27, 1873. It is also necessary, in order that any statute of limitations should run against the mortgage debt, that the debtor should be within the state of Kansas; that the holder of the mortgage should be of full age, and not a minor; that no payment should be made within five years on the mortgage debt; that no acknowledgment in writing of any existing liability, debt or claim should be made within five years with reference to the mortgage debt, and that no promise in writing to pay such debt should be made within that period of time. In this case, the abstract of title certainly did not show that the mortgage debt was barred by any statute of limitations.

As before stated, the abstract of title was furnished to Douthitt and Wyatt on January 7, 1884. O'Neill probably had up to March 1, 1884, within which to furnish such abstract of title or to correct the same, but he made no correction, and left the abstract of title as he first furnished it, showing an imperfect title. As before stated, it is probable that O'Neill had a good title to the land, but neither the abstract of title nor the county records so showed, and Douthitt and Wyatt not only wanted a good title, but *a good merchantable title* — one that appeared, from the records of the county, to be good

and free from all incumbrances, and one upon which money could be borrowed. Of this they informed O'Neill at the time; but he still failed to furnish them a good abstract of title.

We shall here close this opinion, as we do not think it is necessary to enter upon a discussion of any of the other questions presented. But in closing we would say that after a careful reconsideration of the whole case, it is our opinion that our former decision in the case must be modified, our former judgment rendered therein must be set aside, and the judgment of the court below affirmed.

3. Case modified.

All the Justices concurring.