THOMAS DURHAM v. T. J. HADLEY.

1. CONTRACT— *Sale of Land —Title—Implied Warranty*.   In every contract for the sale of land there is always an implied warranty by the vendor that he has good title, unless such warranty be expressly excluded by the terms of the contract.   The implied warranty exists so long as the contract remains executory, *i. e.*, until the deed is given.

2. CASE, *Followed*.   The case of *O'Neill v. Douthitt*, 40 Kas. 689, followed.

3. TITLE, *Clouded—Purchaser, When not Compelled to Pay*.   Where a purchaser enters into a written agreement with the alleged owner of

certain land to purchase the same upon installments, and the pur-
chaser afterward discovers that the title is clouded upon the records
by an apparent incumbrance in such a manner as to affect the value
of the property, and to interfere with the sale of the land to a reason-
able purchaser, such a purchaser is not compelled to complete the
payments upon his contract and trust to future litigation to clear or
quiet the title.

*Error from Johnson District Court.*

On the 14th day of February, 1888, *T. J. Hadley* and C.
M. McEntire brought their action against Thomas L. Hogue,
S. R. Burch and H. S. Miller, to recover $500 alleged to have
been received by Hogue, Burch & Miller as the agents of
Mrs. Bowen for certain real estate sold by them for her bene-
fit. At the instance of Hogue, Burch & Miller, *Thomas Dur-
ham* was also made a defendant. With the consent of the court,
he filed an answer, claiming the $500. Trial before the court
without a jury, at the August term, 1888, and the court made
and found the following special findings of fact:

"1. On the 1st day of June, 1860, Charles H. Thompson
received a patent from the United States for the southeast
quarter of section 25, township 13, range 23, in the district of
lands subject to sale at Lecompton, Kansas, which patent was
duly recorded in the office of register of deeds in Johnson
county, Kansas, April 12, 1873, and said Thompson became
and was the absolute owner of said premises.

"2. The said Charles H. Thompson, on the 3d day of March,
1859, duly conveyed said land by warranty deed to Simeon
F. Hill. Said deed was duly recorded May 17, 1859.

"3. Said Simeon F. Hill and Mildred A. Hill, his wife, on
the 1st day of May, 1860, executed a mortgage on said land
to Wyllys King *et al.* to secure the sum of $1,143.30, due six
months after date, which mortgage was duly recorded May
21, 1860, and has been duly released of record.

"4. On the 11th day of May, 1859, said Simeon F. Hill
and wife, Mildred A. Hill, executed a mortgage on said land
to said Charles H. Thompson, to secure $834, payable Feb-
ruary 10, 1860, which was duly recorded in the office of the
register of deeds of Johnson county, Kansas, May 23, 1859.

"5. No assignment of said mortgage appears of record, and
no release appears on the margin thereof, and the only release

of record of said mortgage executed by said Simeon F. Hill and wife to said Thompson, in evidence or of record, is the following instrument, recorded May 30, 1862, in the recorder's office of Johnson county, Kansas:

"'KNOW ALL MEN BY THESE PRESENTS, That we, Benjamin M. Jewett and Matilda Jewett, his wife, for and in consideration of $800, to them in hand paid by S. F. Hill, of Olathe, Kas., have granted, bargained, sold, released and forever quitclaimed unto the said S. F. Hill all the right, title, claim and demand whatever, which we have, or may have acquired, in and to a certain piece of land by reason of a certain mortgage executed by said Hill to Charles H. Thompson, which said land is described as follows, to wit: Southeast quarter section twenty-five (25), in township thirteen (13), of range twenty-three (23).

"'IN WITNESS WHEREOF, We have hereunto set our hands and seals, this 28th day of May, 1862. (Signed) BENJAMIN M. JEWETT. MATILDA JEWETT. ·

"'STATE OF MISSOURI, COUNTY OF JACKSON, ss.

"'On this 28th day of May, 1862, before me, the undersigned, clerk of the Kansas City court of common pleas, within said county and state, personally appeared Benjamin M. Jewett and Matilda Jewett, his wife, to me personally known to be the persons who executed the foregoing conveyance, and acknowledged that they executed the same for the purposes therein mentioned; and the said Matilda Jewett, being by me made acquainted with the contents of the foregoing, and, on examination separate and apart from her said husband, acknowledged that she executed the same and relinquished her dower therein mentioned freely, and without compulsion or undue influence of her said husband.

"'IN WITNESS WHEREOF, I hereto set my hand and affix the seal of said court, at office in Kansas City, Mo., this 28th day of May, 1862.

[SEAL.] E. M. SLOAM, Clerk,
By C. W. SLOAM, Dep. Clerk.'

"6. Said Simeon F. Hill died intestate in Johnson county, Kansas, on the 9th day of January, 1863, leaving Mildred A. Hill, his widow, and Lizzie Hill, aged 11 years, and Alice Hill, aged 8 years, his sole and only heirs.

"7. Said Lizzie Hill afterward intermarried with T. J. Hadley, one of the plaintiffs herein, in the year 1871; and the said Alice afterward intermarried with John V. Haverty, in the year 1875; and the said Mildred A. Hill, after the death of her husband, Simeon F. Hill, intermarried with one Addison Bowen, in the year 1864.

"8. In the year 1867, M. A. Bowen commenced a civil action in the district court of Johnson county, Kansas, against Lizzie Hill and Alice Hill, to partition the land in said patent described, as well as other land of which Simeon F. Hill was owner at the time of his death, which proceedings in partition are in evidence herein; and defendants Lizzie Hill and Alice Hill were duly represented in court by guardian ad litem, William Roy, Esq., appointed by the court, an attorney at law of this bar. In said partition suit three commissioners

were appointed by the court to make partition of said lands, and made their return, setting apart to M. A. Bowen the land in controversy, with other land, and which said report was submitted to said court and spread upon the records thereof on the 26th day of October, 1867, the same being the twelfth day of the October term of said court, and an order was thereupon made by said court, in the words and figures following:

"'It is hereby considered and ordered by the court, that the said proceedings and report be and the same are hereby approved and confirmed, and that said parties hold the parts and premises as set off and assigned to each, respectively.'

"No other order for the partition of said lands, and no order of confirmation of said proceedings or judgment, or decree in partition, was made in said cause, except as above set forth.

"9. The said M. A. Bowen had been in the actual, peaceable adverse possession of the land in controversy for more than 15 years before the sale thereof to Thomas Durham.

"10. On the 30th day of March, 1887, Hogue, Burch & Miller were the agents of M. A. Bowen to sell the land in controversy; and on that day, they, as such agents, entered into the following written contract with said Thomas Durham:

"'ARTICLES OF AGREEMENT, Made this 30th day of March, 1887, between Mrs. M. A. Bowen and Addison Bowen, her husband, parties of the first part, and Thomas Durham, party of the second part, witnesseth: That the said party of the second part shall first make the payments and perform the covenants hereinafter mentioned in this instrument, the said party of the first part will convey and assure to the party of the second part in fee-simple, clear of all encumbrances whatsoever, by a good and sufficient warranty deed, the following lot, piece or parcel of ground, viz.: 32 acres, more or less, in the southeast of the southeast quarter, and a fraction in the southwest quarter of the southeast, all in section 25, township 13, of range 23; and the said party of the second part hereby covenants and agrees to pay to said party of the first part the sum of $200 per acre, in the manner following: $500 cash in hand paid, the receipt of which is hereby acknowledged, and the sum of one-half of the whole amount in 29 days from the above date, and the balance in one year from date, at 8 per cent. interest per annum; (the above land is sold subject to a lease made to M. T. Graham, which covers nine acres of grass land;) with interest at 8 per cent. per annum, payable annually, on the whole sum remaining from time to time unpaid, and to pay all taxes, assessments or impositions that may be legally levied or assessed upon said land subsequent to the year 1886; and in case of the failure of the said party of the second part to make either the payments or perform any of the covenants on his part hereby made and entered into, this contract shall, at the option of the party of the first part, be forfeited and determined, and the party of the second part shall forfeit all payments made by him on this contract, and such payment shall be retained by said party

of the first part in full satisfaction and in liquidation of all damages by her sustained, and she shall have the right to reënter and take possession of the premises aforesaid. It is mutually agreed that all the covenants and agreements herein contained shall extend to and be obligatory for the heirs, executors, administrators and assigns of the respective parties.

"'IN WITNESS WHEREOF, The parties to these presents have hereunto set their hands, the day and year first above written.

(Signed)      MRS. M. A. BOWEN,<br>
ADDISON BOWEN,<br>
Per Hogue, Burch & Co., Agents.<br>
THOMAS DURHAM.'

"11. Said written contract was the only contract between said Thomas Durham and the said Bowens for the sale of said land.

"12. Said Bowen executed a warranty deed to said land to said Thomas Durham, who was a non-resident of the state of Kansas, and said deed was delivered to Hogue, Burch & Co. for said Durham, and said Hogue notified Thomas F. Durham, agent of Thomas Durham, of such tender and demanded the purchase-money, in accordance with the terms of the written contract. Said Durham objected to the title of said land, and refused to accept said deed and make payment of said purchase-money.

"13. In November, 1887, the said Thomas Durham, in Philadelphia, Pa., made to said Thomas F. Durham, in Kansas City, Mo., a quitclaim deed to said land in controversy.

"14. The day before the commencement of this suit, the said M. A. Bowen in writing assigned to her son-in-law, T. J. Hadley, and C. M. McEntire, plaintiffs herein, the sum of money so due to her from her agents, Hogue, Burch & Co., and the consideration for such assignment was services rendered for her and work done.

"15. No deed was tendered to Thomas Durham, or Thomas F. Durham, who lived in Missouri, but said Durhams were notified that said deed had been tendered to Hogue, Burch & Co., for them.

"16. An abstract was furnished to said Thomas Durham by T. J. Hadley; by the terms of the contract, the Bowens were not bound to furnish such abstract.

"17. At the date of the execution of said contract, the said Thomas Durham paid to Hogue, Burch & Co. $400 cash, and gave to Hogue, Burch & Co. his due-bill for $100, having only $400 in his possession at the time; and said Hogue, Burch & Co. never paid said Bowens said money, or any part thereof, but still retain the same.

"18. The said Bowens have complied with all the conditions on their part under said contract, and a complete title to said land in controversy is vested in said M. A. Bowen, free and clear of encumbrances."

And thereon, as a conclusion of law, the court found that T. J. Hadley and C. M. McEntire were entitled to recover from Hogue, Burch & Co. the $400 in money and the $100 due-bill, as prayed for in their petition. Judgment was entered accordingly, and the costs were adjudged against Thomas Durham. He excepted, and brings the case here.

*I. O. Pickering*, for plaintiff in error.

*John T. Little*, and *James P. Hindman*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: This action was brought by T. J. Hadley and C. M. McEntire, as assignees of Mrs. M. A. Bowen, to recover the sum of $500, alleged to have been deposited with Hogue, Burch & Miller, real-estate agents, by Thomas Durham, as part purchase-money for certain real estate alleged to have been purchased by Durham from Mrs. M. A. Bowen, through Hogue, Burch & Miller, as her agents. Afterward, by order of the court, Thomas Durham was made a party defendant, and filed his answer claiming the money. Hogue, Burch & Miller answered, admitting the payment of the money to them as agents of Mrs. Bowen, disclaiming all right thereto, and brought it into court to be paid to the party entitled thereto.

Trial was had by the court, without a jury, and, at the request of Durham, the court made special findings of fact and conclusions of law. Judgment was afterward rendered in favor of Hadley and McEntire, and against Hogue, Burch & Miller for the recovery of the money, and against Durham for the costs of suit. Durham excepted, and brings the case here.

It appears from the record that $400 in cash and a note of $100 were deposited, on March 30, 1887, by Thomas Durham

with Hogue, Burch & Miller, agents of Mrs. M. A. Bowen, on a contract for the sale of land, which contract was never consummated. On February 13, 1888, the day before this action was brought, Mrs. M. A. Bowen assigned her claim to the $500, in writing, to Hadley and McEntire. After the written contract of the 30th of March, 1887, the evidence shows that Mrs. M. A. Bowen remained in possession of the land. After the contract was delivered, T. J. Hadley, the son-in-law of Mrs. M. A. Bowen, furnished an abstract of title of the land to Thomas F. Durham, the agent of Thomas Durham. As soon as the abstract was furnished and examined, Durham objected to the title, and paid nothing further upon the contract. Mrs. Bowen deposited a deed of the land with Hogue, Burch & Miller, and then demanded the money stipulated in the contract, and, when it was not paid over, she claimed the $500 as a forfeit or penalty. In 1860, Charles H. Thompson was the owner of the land by a patent from the government. On the 3d of March, 1859, he conveyed the land by warranty deed to Simeon F. Hill. On the 11th day of May, 1859, Simeon F. Hill and wife executed a mortgage on the land to Charles H. Thompson to secure $834, payable February 10, 1860. This mortgage was duly recorded in the office of the register of deeds of Johnson county on May 23, 1859. No assignment of the mortgage appears of record, and no release thereof appears on the margin of the record. On May 30, 1862, Benjamin M. Jewett and Matilda Jewett filed a release and quitclaim deed, reciting that Simeon F. Hill had paid to them the mortgage executed to Thompson. It was decided in *O'Neill v. Douthitt*, 40 Kas. 689, that —

"Where an abstract of title shows that a mortgage on the land has been recorded, it is then necessary, in order that the abstract shall show a good and complete title, that it shall also show that the mortgage was not only released and discharged of record, but also that the person releasing or discharging the same had full and complete authority of record to do so."

3. Title, clouded —purchaser, when not compelled to pay.

There is nothing in the office of the register of deeds of Johnson county showing, or tending to show, that Benjamin F. Jewett and wife had any authority to release or discharge this mortgage. The title of the property described in the contract executed by Mrs. Bowen and Thomas Durham was clouded or affected by the real-estate mortgage when the contract was executed, and the cloud had not been removed when Mrs. Bowen tendered her deed. It is said in *O'Neill v. Douthitt*, supra, that—

"The general policy of the law in this state is to require, as far as practicable, every interest in real estate to be evidenced, not only by writing, but also by some public record of the county in which the real estate is situated. (See statutes of frauds and perjuries, §§ 5 and 6; statutes relating to trusts and powers, § 1; registry laws; acts relating to conveyances, to mortgages, to the records of courts, to mechanics' liens, to other liens, and to taxes.) Under our statutes and in law, as contradistinguished from equity, everything affecting real estate must be in writing, (see statutes above cited,) and every instrument in writing affecting real estate may be recorded, (conveyance·act, § 19,) and, to be considered as valid as against persons without actual notice, it must be recorded. (Conveyance Act, § 21.) Now the release or discharge of a real-estate mortgage certainly affects real estate, or, to speak more accurately, it affects the title thereto or some interest therein. Hence, a valid release of a real-estate mortgage should not only be shown by a valid writing, but it should also be shown by a valid record. Such has always been the view taken by this court. (*Burhans v. Hutcheson*, 25 Kas. 625; *Lewis v. Kirk*, 28 id. 497; *Perkins v. Matteson*, 40 id. 165; same case, 19 Pac. Rep. 633.)"

The question therefore arises, whether, upon the conclusions of fact, Thomas Durham was compelled to perform his contract of the 30th of March, 1887, and, if he did not do so, whether the $500 deposited by him can be treated as a forfeit or penalty. The trial court found that Mrs. Bowen had fully complied with all of the conditions of the contract upon her part, and that she was the owner of the land in controversy, free and clear of all incumbrances. But, notwithstanding this fact, it appears from the records that the title to the land is doubt-

ful, or at least clouded, on account of the non-release upon record of the mortgage of $834, with interest. Mrs. Bowen agreed in her written contract that she would "convey and assure to Thomas Durham the 32 acres of land described therein in fee-simple, clear of all incumbrances whatsoever, by a good and sufficient warranty deed." Under the contract, Durham was entitled, as the purchaser of the land, not only to a good title, but to a marketable title. In every contract for the sale of land there is always an implied warranty by the vendor that he has good title, unless such warranty be expressly excluded by the terms of the contract. The implied warranty exists so long as the contract remains executory, *i. e.*, until the deed is given, when the party must rely on the covenants in the deed, unless there has been fraud, in which case relief may be afforded in equity.

1. Contract—sale of land—title—implied warranty.

It is undoubtedly true that, where an incumbrance is discovered upon land, the vendor must discharge it before he or she can compel the payment of the purchase-money by the vendee at law or in equity. In this case, it is claimed that no incumbrance existed, because the mortgage had been paid; but the records in the office of the register of deeds show no release and no payment to any party having authority to release or accept payment. If Mrs. Bowen had commenced an action for specific performance of the contract against Durham, she could not have succeeded, because it is the rule that, in actions by a vendor, the parties will not be forced to complete the contract unless the title is free from any reasonable doubt. Again, a specific performance will never be decreed at the action of the vendor, whenever the doubt concerning his title is one which can only be settled by further litigation. A vendee " will not be compelled to buy a lawsuit." ( Pom. Contr. §§ 198–208.)

In this case, under the decision of this court in *O'Neill v. Douthitt*, although Mrs. Bowen may have had title to the land free from any incumbrance, neither the abstract of title nor the county records so showed, and as Durham not only wanted a good title, but a good, marketable title, one which appeared

6 — 47 KAS.

from the records of the county to be good and free from all incumbrances, he could not be compelled to accept the deed of which he had notice, or be compelled to pay 2. Case, followed. the money upon the contract, and then permit Mrs. Bowen to settle her title by litigation in the future, or be compelled to quiet his title by future litigation. Mrs. Bowen ought, before she made her contract, or offered her deed, or at least before this action was brought, to have had Charles H. Thompson release on the record the mortgage of $834 and all interest, if it is paid, or she ought to have had the written assignment of the mortgage to Benj. F. Jewett recorded, if Jewett was ever the legal owner thereof. She did none of these things, and none of these things have yet been done. The title is clouded with an apparent incumbrance, and the land, whether bought by Durham for speculation or for other purposes, is in no condition to be sold, as the seeming incumbrance, not legally released, must affect the value thereof, and interfere with the sale of the land to a reasonable purchaser. It is said, however, that Mrs. Bowen never agreed to furnish any abstract, and therefore that this case differs from the O'Neill-Douthitt case. It is immaterial whether there was any agreement to furnish an abstract or not. The cost of the abstract is not in controversy. The abstract was furnished, and whether Durham ascertained from the abstract, or from the records in the office of the register of deeds, that the title of the land was clouded by an apparent incumbrance, is of no concern. The facts are, that Durham could not and cannot obtain a good marketable title. He cannot be compelled to accept any other title. The quitclaim deed of Durham of the 15th of November, 1887, is of no importance. If he had no title or interest in the land, the quitclaim deed transferred nothing.

Upon the facts, we do not think that the money deposited with Hogue, Burch & Miller can be claimed as a forfeit or penalty; therefore the judgment must be reversed, and the cause remanded, with direction to the trial court to enter judgment upon the findings of fact in favor of Thomas Durham, and against Hadley and McEntire, the plaintiffs below.

All the Justices concurring.