No. 44,160

William F. Shear and Edith L. Shear, *Appellants,* v. Keith Helm and Katherine Helm, *Appellees.*

(403 P. 2d 941)

Opinion filed July 10, 1965.

*Mark L. Bennett,* of Topeka, argued the cause, and *Clayton M. Davis* and *Jerry W. Hannah,* of Topeka, were with him on the briefs for appellants.

*Fred S. Jackson,* of Topeka, argued the cause, and *Walter G. Stumbo, Robert R. Irwin, Craig Irwin* and *Mary Schowengerdt,* of Topeka, were with him on the briefs for appellees.

The opinion of the court was delivered by

Fatzer, J.: The plaintiffs-appellants, William F. Shear and Edith L. Shear, commenced this action for a rescission of a contract for the sale of real estate and to recover $2,000 paid as earnest money. The defendants-appellees, Keith Helm and Katherine Helm, answered, denying they had breached the contract, and in their cross petition sought specific performance of its terms on the part of the plaintiffs-appellants, alleging that they were able to convey a merchantable title in accordance with the contract of sale.

There was little dispute concerning the facts which are summarized: On March 14, 1963, the Shears and the Helms entered into a real estate contract, hereafter referred to as the Shear-Helm contract, whereby the Shears agreed to buy and the Helms agreed to sell a certain residence property in Topeka. The sale was handled by Robert N. Kirk, doing business as The Kirk Co., Realtors, Topeka, who acted as agent for the Helms. At the time the Shear-Helm contract was signed, the Shears deposited $2,000 earnest money on the purchase price. By agreement of the parties and upon order of the court, the earnest money was deposited with

the clerk of the district court to await the final outcome of the action.

Previously, and on December 21, 1961, Thelma Brown Wright Shuck and her husband entered into a contract with the Helms, hereafter referred to as the Shuck-Helm contract, whereby the Shucks agreed to sell to the Helms the residence property involved. The contract provided that a warranty deed be executed by the Shucks and put in escrow with the Columbian Title and Trust Company of Topeka, to be delivered to the Helms after the full amount of the purchase price had been paid. After the execution of that contract, it was discovered by the Helms that the Shucks only owned an undivided 11/12 interest and that an undivided 1/12 interest was owned by Robert Bruce Wright, the minor son of Mrs. Shuck. To correct that situation, the Shucks and the Helms entered into a supplemental agreement providing that if the Helms desired to sell the real estate, the Shucks would commence guardianship proceedings to clear the property for resale. This all occurred in the late 1961 and early 1962, prior to the time the Helms contracted to sell to the Shears.

When the Shear-Helm contract was signed, the Helms were aware of the status of their title and did not mention that defect either to Kirk or the Shears, nor was any mention made of it in the Shear-Helm contract. Kirk first learned of the defect in the Helms' title on March 18, 1963. Twelve days later, on March 30, 1963, the Shears first learned that an undivided 1/12 interest in the property was owned by Mrs. Shuck's minor son Robert, who lived in California with his mother and Mr. Shuck. After Shear learned of the defect, he telephoned Kirk, expressing his dissatisfaction, and told him the sale had been mishandled.

On April 2, 1963, Kirk wrote Shear and advised him, among other things, that prior to March 23, 1963, Mr. Shuck telephoned him from California that they (the Shucks) preferred not to institute proceedings to have a guardian appointed for the minor in order to obtain his undivided 1/12 interest, and suggested several alternatives to the contract between the Helms and the Shears so that guardianship proceedings would not be necessary. Kirk's letter further stated:

"What you evidently do not realize is that the title is not fully marketable until the minor's 1/12th interest is obtained. . . . There is nothing that would require the minor to deed his 1/12th interest after reaching his majority

. . . no legal move could be made to force the boy to execute a deed if he did not desire to do so.

"Actually no problem is involved if the Shucks carry out their agreement with Mr. Helm. On March 23rd, I wrote the Shucks asking them again to start the proceedings as it was not possible to secure a mortgage either now or ten months from now (when the minor would reach majority) unless the title was cleared . . ."

On April 3, 1963, Shuck wrote Kirk acknowledging his letter of March 23, and again expressed the Shucks' objections to a short-term guardianship and suggested alternatives whereby a guardianship could be avoided and that they would have the minor, Robert, clear the title immediately upon his 21st birthday on January 31, 1964. The Helms did not own the *legal* title to an undivided 11/12 interest and did not own either the *legal* or *equitable* title to an undivided 1/12 interest in the property.

On April 9, 1963, a Preliminary Report of Title Insurance, which had been issued by The Columbian Title and Trust Company on April 2, 1963, was furnished to counsel for the Shears for an opinion, and the title was rejected for the reason that the sellers did not own an undivided 1/12 interest in the property.

The Shear-Helm contract made time the essence and provided that the seller would convey the real estate free of all encumbrance, by a general warranty deed which "shall be executed at once and held by the escrow agent," and further provided that the transaction would be closed on or before April 26, 1963, "unless additional time is required to perfect title as set forth in paragraph 5 hereof," and that possession would be delivered to the purchaser on or before May 1, 1963. After the Shears signed the contract, and relying on possession of the property on May 1, 1963, they notified their landlord that they would vacate the rented premises on May 1, 1963. When they discovered on March 30, 1963, there was little likelihood they could get possession on May 1, 1963, they attempted to extend the time on their lease, but were unable to do so.

On April 15, 1963, Kirk wrote Shears' attorney, inquiring whether the Shears planned to take possession of the property on May 1, or whether they preferred delaying possession until the guardianship proceedings were completed. He stated that if the Shears preferred waiting until those proceedings were completed, that the Helms would not make any arrangements for the few weeks between May 1, and the date they were to move from Topeka. Two

days later, on April 17, 1963, counsel wrote Kirk that the Shears would not take possession of the property on May 1, 1963, unless the Helms could furnish full title to the property on that date.

On April 23, 1963, no proceedings to acquire the minor's interest in the property having been filed, counsel for the Shears wrote Kirk that the Shears considered the Helms to be in default and were rescinding the contract and demanding return of the $2,000 earnest money which they deposited when the contract was signed. His letter further stated:

". . . The seller was well aware at the time he entered into the written contract with my client, Mr. William F. Shear, on March 14, 1963, that it would be necessary to take legal proceedings to acquire the title of Robert Bruce Wright, a minor. If proceedings had been started at that time they would have been completed by the exercise of ordinary diligence on or before April 26, 1963, and this matter could have been closed on April 26, and possession given my client on May 1."

This letter was in response to Kirk's letter to counsel on April 22, 1963, advising that the Helms would not be able to complete the contract and close the same on April 26, 1963, as provided therein and that the Helms were relying upon the provision of the contract to the effect that "this transaction shall be closed on or before April 26, 1963, unless additional time is required to perfect title as set forth in paragraph 5 hereof."

Thereafter, and on April 30, 1963, the Shucks filed a petition in the probate court of Shawnee County for the appointment of a guardian for the estate of Robert Bruce Wright, a minor. On the same date, the probate court appointed a guardian and issued letters. On May 13, 1963, the guardian filed a petition to sell the undivided 1/12 interest owned by the minor, Robert Bruce Wright, and on June 5, 1963, the probate court authorized the sale of the minor's interest in the property.

During oral argument we were advised that no subsequent proceedings were had in the probate court to sell the minor's interest and that the probate court did not issue an order directing the sale of the property to the Helms, nor was there a guardian's deed executed to convey the minor's 1/12 interest to anyone.

Thereafter, and on June 10, 1963, nothing else having occurred in the meantime, the Shears commenced this action.

On April 30, 1964, approximately ten months after the action was commenced, and after numerous pretrial conferences, the case was tried by the court. During the trial, it was admitted in open court

that the Helms had not secured title to the undivided 1/12 interest owned by the minor and that they had no contract with him to purchase that interest. Upon the completion of the evidence, both parties requested findings of fact and conclusions of law.

On June 10, 1964, the court filed its findings of fact, conclusions of law, and memorandum opinion, and on that date, entered judgment decreeing specific performance of the Shear-Helm contract. The journal entry, recognizing that the Helms did not have title to the property, stated, in part:

". . . that the Defendants Helm are allowed thirty (30) days from this date to either furnish to the Plaintiffs an Abstract of Title, certified to date, *showing marketable title in the Sellers* or, at their option, by furnishing a Standard Owner's Policy of Title Insurance to the Purchasers which will insure the Purchasers against loss or damage to the extent of the purchase price *by reason of defects in the title of the Sellers.* . . ." (Emphasis supplied.)

On July 10, 1964, the parties met in chambers at which time counsel for the Helms furnished counsel for the Shears a supplemental report for title insurance policy. This report showed an undivided 11/12 interest vested in Thelma Brown Wright Shuck, and an undivided 1/12 interest vested in Robert Bruce Wright. Thereafter, and on July 11, 1964, counsel for the Shears received another title report which had an addendum written on it to the effect that The Columbian Title and Trust Company had deeds properly executed, in its escrow file to convey full title to the Shears. The Shears' motions for a new trial; to modify, strike and amend, and to make additional findings of fact and conclusions of law were overruled, as was their motion requesting the court to order the $2,000 deposit returned to them. Thereafter, they perfected this appeal.

In support of its findings of fact and conclusions of law, the district court prepared a detailed memorandum opinion and discussed the law and facts and set forth the rationale of its decision decreeing specific performance of the contract. Memorandum opinions of districts courts serve to illuminate the decisions they accompany, and the practice of filing them is commendable. (*Robbins v. Hannen,* 190 Kan. 711, 378 P. 2d 1.) In *State v. Baxter,* 121 Kan. 852, 250 Pac. 294, this court held that a memorandum opinion, "is to be considered as a finding of facts, to the same extent as if it had been spread on the journal."

It may be said the district court's decision was premised basically upon two findings. First, that the Shears' letter of April 23, 1963,

effected a repudiation of the contract and constituted a refusal on their part to give the Helms additional time to perfect the title, thereby making a formal tender of title by the Helms unnecessary, and, second, that the Helms took proper steps within a reasonable time to satisfy any objection to the title and to obtain the outstanding interest of the minor, Robert Bruce Wright.

The pertinent parts of paragraphs 5 and 7 of the Shear-Helm contract are summarized and quoted: Paragraph 5 obligated the seller to promptly furnish to the purchaser an abstract of title certified to date, showing marketable title in the seller, or at their option, furnish a standard owner's policy of title insurance to insure the purchaser against loss or damage to the extent of the purchase price by reason of defects in the seller's title. It then provided:

"If an abstract of title is furnished to purchaser and valid objections are made to the marketability of the title shown thereby, seller may then at his option either correct such objections to make the title marketable, or may in lieu of said abstract furnish to purchaser an owner's policy of title insurance for the amount of the purchaser price.

"Seller shall have a reasonable time to satisfy any valid objections to the title, and make the title marketable to purchaser; and, if legal proceedings shall be necessary, such proceedings shall be begun promptly after return of the abstract or title report to the seller, and shall be completed as soon as possible. . . ."

Paragraph 7 obligated the seller to deliver possession to the purchaser on or before May 1, 1963, and provided:

"This transaction shall be closed on or before April 26, 1963, unless additional time is required to perfect title as set forth in paragraph 5 hereof."

Under the facts and circumstances, was the district court's finding that the Helms took proper steps to perfect their title within a reasonable time as required by the contract, supported by substantial evidence or correct as a matter of law? The facts of the case have heretofore been detailed. Despite the fact that the probate court entered its order for sale of the minor's 1/12 interest on June 5, 1963, no sale was actually made under that order and no guardian's deed was ever issued to perfect the Helms' title. The record is silent as to why no sale was made or deed issued during the five days that elapsed between the probate court's order to sell the minor's interest and when this action was filed on June 10, 1963, or for that matter, why that authority was never used.

Up to and including the trial of the action, the Helms were never able to convey a merchantable title to the Shears without the prom-

ise and acquiescence or voluntary act of a third party. Robert Brown Wright, who was not a party to either the contract or to the litigation. In such a situation, the Shears should not reasonably have been expected to proceed with the contract after they discovered the condition of the Helms' title. The rule is stated in 55 Am. Jur., Vendor and Purchaser, § 277, p. 722, as follows:

". . . he should not be expected to proceed with the contract where the fact develops that there are defects or encumbrances the removal of which rests upon mere hope and conjecture, *as where, in the acquisition of title, the vendor must necessarily be wholly dependent upon the will and volition of a third party.*" (Emphasis supplied.)

More than that, the Helms were unable to deliver merchantable title on June 10, 1963, when the district court entered judgment, decreeing specific performance. The memorandum opinion conceded the Helms did not then have marketable title and it allowed them an additional 30 days from that date to perfect title. If the Helms were able to establish that they had or could secure merchantable title, the burden of proof was upon them to come forward with their evidence and establish such fact. (*Carnine v. Bacon,* 131 Kan. 643, 293 Pac. 392, Syl. ¶ 2.) Instead, the Helms relied entirely on the mere allegation in their cross petition of their ability to convey marketable title, which was denied in the Shears' reply.

In arriving at its decision, the district court held that at the time of the execution of the contract, the Shears were not entitled to and had no right to believe and act upon the belief that the Helms were the owners of the property. The undisputed evidence established that when the contract was signed, the Shears believed the Helms were the owners in fee simple of the property they were selling and there was nothing in the contract to indicate to the contrary. The Shears testified that if they had known the Helms were not the owners of the property, and that they needed to acquire the undivided 1/12 interest of the minor, they would not have signed the contract. In other words, they would have purchased other property to avoid the title question. Likewise, Kirk testified that if he had been advised of the outstanding interest of the minor, he would have shown that interest in the contract before asking the Shears to sign it. The Helms were well aware of the condition of their title. Their failure to disclose their lack of title to their agent Kirk and to the Shears entrapped the parties into signing the contract. This is not the kind of honest and forthright action which is required of one seeking relief in a court of equity. In *Durham v.*

*Hadley,* 47 Kan. 73, 27 Pac. 105, an action was begun to recover purchase money paid on a contract for the sale of real estate. The purchaser refused to accept title because of the reported mortgage which was unreleased.

This court held:

"In every contract for the sale of land there is always an implied warranty by the vendor that he has good title, unless such warranty be expressly excluded by the terms of the contract. The implied warranty exists so long as the contract remains executory, *i. e.,* until the deed is given." (Syl. ¶ 1.)

The case of *Ely v. Joslin,* 111 Kan. 638, 208 Pac. 628, was an action for specific performance of a real estate contract. The question there was the rights of the seller under the contract when he was not able to convey merchantable title at the inception of the contract. The Durham case was followed, and the court held:

"In a contract for the sale of land there is an implication that the vendor has a good title and a right to convey unless such implication is expressly excluded by the terms of the contract." (Syl. ¶ 1.)

Here, there was no exclusion of the warranty in the contract nor was there any notice to the Shears that the Helms could not convey full title to the property, although they obligated themselves to immediately execute a general warranty deed conveying fee simple title to the Shears and to place the same in escrow. In this respect, the rule is stated in 49 Am. Jur., Specific Performance, § 52, p. 67, as follows:

"Unfairness which will defeat the right to specific performance of a contract may consist in the suppression or concealment of facts known by one party but unknown to the other which would have influenced the action of the latter. Such unfair concealment or suppression may have the same effect as affirmative misrepresentation as a ground for the refusal of a court of equity to grant specific performance."

Apparently, the rationale of the district court was that a reasonable time for the Helms to perfect their title had not expired on April 30, 1964, when the action was tried, which was more than one year after the date set for performance of the contract itself, and, further, that a reasonable time still had not expired as of the date of judgment on June 10, 1964, thirteen months after the date originally set for the closing of the transaction, and to give the Helms an additional 30 days thereafter to perfect title, demonstrates to this court that the district court, sitting as a court of equity, erred in holding the Shears did not give the Helms a reasonable time to correct their title. See *Durham v. Hadley,* supra.

Moreover, the holding that the Shears were required, in equity, to take possession of the property on May 1, 1963 before the Helms were able to furnish marketable title was also erroneous. In this connection, the district court found:

"Had the plaintiffs Shear cooperated with the defendants Helm, they could have taken possession of the premises on May 1, 1963, and marketable title to the property could have been provided to the plaintiffs within a short period of time after June 5, 1963."

Events subsequent to June 5, 1963, established that this finding was speculative and erroneous. The Helms were not able to deliver marketable title when the action was tried or when judgment was rendered some thirteen months after the time fixed to close the contract. Under these circumstances, the district court's finding had the effect of substituting the Shears for the Helms in their untenable position in the Helm-Shuck contract and would have made the Shears the purchasers of a lawsuit. In *Durham v. Hadley*, supra, it was said that specific performance will never be decreed in the action of the vendor whenever the doubt concerning his title is one which can only be settled by further litigation, and that "A vendee will not be compelled to buy a lawsuit."

The district court further found "that the filing of this lawsuit and the refusal of the Shears to go through with the contract prevented the Helms from making the title marketable. We think there was no evidence to support this finding. The court apparently reasoned that the Shears' action excused the Helms from their duty to be able to perform. Throughout the entire period of the contract and the litigation, the Helms needed a deed from Robert Brown Wright, the minor, and they needed a deed from the Shucks' to maintain their action for specific performance. In what manner the Shears' notice decreeing a default or the filing of the lawsuit prevented the Helms from obtaining those deeds, is unexplained, either by the evidence, the findings of fact, or in the memorandum opinion. The Shears' notice of default was the activating factor that caused the Helms and the Shucks to proceed in an attempt to acquire title by getting authority from the probate court to sell the minor's interest. As previously indicated, no deed was ever obtained between June 5, when the order of sale was entered, and June 10, 1963, when the action was commenced, or at any subsequent time. It was not because of notice of default that the Helms did not acquire title to the property, but it was for some

other reason that was entirely undisclosed by the evidence. See *DeHart v. Eveleigh*, 141 Kan. 341, 41 P. 2d 725. The inability of the Helms to acquire title was due to a cause or causes unknown and the action of the Shears in notifying the Helms of default and the filing of the action in no wise contributed to the failure of the Helms to acquire the title to the property they had contracted to sell.

Other points have been briefed and argued by the parties, but in view of the conclusions heretofore announced it is unnecessary to discuss them.

For reasons heretofore stated, the judgment of the district court is reversed with directions to enter judgment for the Shears rescinding the contract and to order the clerk of the district court to pay the Shears the $2,000 earnest money now on deposit in that office.

It is so ordered.