THE STATE, *ex rel.*, V. WILLIAM F. EWING.

1. ONE-MILL TAX, *Repealed.* Section 4 of ch. 149 of the Laws of 1879, p. 270, works by implication a repeal of all prior enactments providing for the levy of a one-mill tax for the state annual school fund.

2. ———— Said section is not invalid by reason of conflict with § 16 of art. 2 of the state constitution.

### Original Proceedings in Mandamus.

WILLIAM F. EWING, county clerk of Lyon county, under the advice of the county attorney of that county, refused to extend upon the tax-roll of said county, for the year 1879, the tax of one mill upon the dollar for the general school fund of the state, provided for by § 1, art. 16, ch. 122, Laws of 1876. The above refusal was based upon the ground that the above section had been repealed by § 4, ch. 149, Laws of 1879, and that therefore there is no law now in force providing for the levy aforesaid. The attorney general brought this action to compel the said county clerk to extend upon the tax-roll of Lyon county the levy of one mill upon the dollar, for the purpose of raising revenue for the annual school fund for the years 1879 and 1880. The petition herein was filed August 22, 1879, the case submitted on briefs, October 23, 1879, and the opinion filed, November 22, 1879.

*Willard Davis*, attorney general, for the The State.

*Gillett & Forde*, and *Sterry & Sedgwick*, for defendant.

The opinion of the court was delivered by

BREWER, J.: The question in this case is as to the present existence of the one-mill tax for the state annual school fund; and it turns upon the validity and effect of § 4 and § 5, ch. 149, Laws of 1879. Prior to this year, unquestionably such a tax existed.

Section 3 of article 6 of the constitution of the state provides for the perpetual school fund, and contemplates that

the legislature may make provision, by taxation or otherwise, for the school fund. The first subdivision of § 3 of the act for the admission of Kansas into the union grants to the state, *for the use of schools,* sections 16 and 36 in every township of public lands in said state, or their equivalent, when any part has been sold.

Pursuant to the policy thus outlined in the constitution and the act of admission, the legislature of 1861, in order to give effect to this policy, and help put it into practical operation — and aware, also, that as yet there was not anything. realized from this grant of school lands, and that, in all probability, nothing could be realized out of it for many years, without a great sacrifice of that munificent endowment — deemed it better policy to aid the common schools of the state by a direct tax, until such time as the fund arising from said endowment might become sufficient.

Upon that theory, then, in the fifth section of art. 8, ch. 76, p. 271, Laws of 1861, it was enacted:

"SEC. 5. For the purpose of affording the advantages of a free education to the children of the state, the state annual school fund shall consist of the annual income derived from the interest and rents of the perpetual school fund, as provided in the constitution of the state, and such sum as will be produced by the annual levy and assessment of one mill upon the dollar valuation of the taxable property of the state; and there is hereby levied and assessed, annually, the said one mill upon the dollar, for the support of common schools in the state; and the amount so levied and assessed shall be collected in the same manner as other state taxes."

This section, then, is the law which first authorized the levy of a tax for the state school fund, and this section has remained upon our statute books without any other change than the numbering of the section from that time until the passage of the act of 1879. The school laws have several times been reënacted with various amendments, but they have always contained the substance of this section without change.

It stands as § 76, ch. 92 of the Gen. Stat. of 1868, and is also found as § 1, art. 16, ch. 122, Laws of 1876. In 1879

an act was passed which stands as ch. 149, and the title to which is as follows: "An act to provide revenue for the fiscal years ending June 30, 1880, and June 30, 1881, and to repeal section .76, chapter 92 of the General Statutes of Kansas." Section 4 of the act reads as follows:

"That the state annual school fund shall consist of the annual income derived from the interest and rents of the perpetual school fund, as provided in the constitution of the state."

And section 5:

"That section seventy-six of chapter ninety-two of the General Statutes of Kansas be and the same is hereby repealed."

Upon this, three propositions are advanced by counsel for the state: First, That said § 5 is inoperative for the reason that the section named therein had already been superseded by the legislation of 1876, cited *supra*, and was therefore no longer in force. It had been already repealed by implication, and an express repeal was therefore a nullity. Second, That the subject-matter of § 4 is not expressed in the title to the act, and the section is therefore void, as in conflict with § 16, art. 2 of the constitution. Third, That if the subject be considered as expressed in the title, still the section will be void as in conflict with said section of the constitution, as the act contains more than one subject. The section of the constitution cited provides that "no bill shall contain more than one subject, which shall be clearly expressed in its title," etc.

Of these in their order: We deem it unnecessary to consider the effect of the legislation of 1876 upon § 76 of ch. 92, Laws of 1868, or the effect of said § 5 upon either or both of the prior enactments, for if § 4 is constitutional and valid, it repeals by implication all the prior enactments in reference to the same subject. Said § 4 provides that the "state annual school fund shall *consist of*," etc. In this it follows the language of prior sections. And in defining what it shall *consist of*, it impliedly excludes all other constituent elements than those named. *Expressio unius, exclusio alterius.* A manifest

difference exists between legislation providing that certain taxes be levied and certain income provided and paid into a fund, and that declaring that the fund shall *consist* of the proceeds of said taxes and said income. In the former case, subsequent legislation providing for the continuance of the income, might not, by its silence in respect to the taxes, disturb them; but in the latter, such legislation providing that the fund shall *consist* of either the proceeds of the taxes, or the income, impliedly excludes the other. Suppose the matter of representation in the legislature were exclusively within legislative control, and one legislature should enact that the lower house should *consist* of two members from each county, and a subsequent legislature should, without express repeal of the prior law, enact that such house should *consist* of one member from each county, would it for a moment be doubted that there was an implied repeal, and that the house should consist of only one member from each county?

Legislation which carries with it definition and description, implies totality, completeness of definition and description. Here, in substance, prior legislation enacted that the annual school fund should consist of moneys derived from two sources; that of 1879, that it should consist of moneys derived from but one of those sources. Can it be doubted that authority to collect money from the other source was taken away? Can you enforce the collection of money to put into a fund without authority to put the money, when collected, into that fund? Can you collect taxes for a given purpose, when you have no authority to use the taxes when collected for that purpose?

We pass to the other questions, and shall consider them together. In them is more of difficulty. Preliminarily we remark, as conceded law, first, that courts will not, upon mere doubts of its constutionality, declare a law invalid. The conflict with the constitution must be manifest. Second, mere awkwardness of expression does not overthrow a statute. The substance, and not the form, governs. Third, the intent determines the scope and effect of a statute. It may restrict

or enlarge the ordinary meaning of language. Not that an unexpressed intent is law, but a manifest intent interprets the words used. Not infrequently the "letter killeth, but the spirit giveth life."

The act of 1879 is entitled "An act to provide revenue," etc. Now how broad is the term "revenue," and what may be included in such a title? Does it mean simply funds raised by taxation, and is the levying of taxes all that may be included? Such would seem to be the views of the counsel for the state, but we cannot think them correct. One of the definitions given by Webster of the term is, "the annual produce of taxes, excise, customs, duties, rents, etc., which a nation or state collects and receives into the treasury for public use." The word is broad and general, and includes all public moneys which the state collects and receives, from whatever source and in whatever manner. The general funds of this state are collected from taxes, but the legislature might, in an act with such a title — at least, so far as any question of the form of the legislation is concerned — enact that they be collected from licenses, or from the sale of lottery tickets, or it might unite and enact that part might be collected from one source and in one manner, and the rest from another source and in a different manner.

Now § 4 simply enacts what revenues shall be provided for the annual school fund, which is a public fund as much as any. Provision for it is a matter of legislative care and duty. It is true the section does not in form enact that moneys be collected; but would there be any doubt of the validity of a section which declared that a tax of one mill on the dollar be levied for the annual school fund? Would it not be conceded that this was simply providing revenue? The form of this section grows out of the constitutional provision concerning the fund and prior legislation. The constitution declares that certain lands, and the proceeds thereof, shall constitute a perpetual school fund, not to be diminished, and that the rents and interest therefrom, "and such other means as the legislature may provide, by tax or otherwise,

shall be inviolably appropriated to the support of common schools." Prior legislation had been in the form heretofore quoted. Such section, though appearing several times in the statutes of the state, has not been reënacted each year. The understanding has been that it continued a tax from year to year; and the state must concede this, for otherwise, as there is no express levy of the one-mill tax this year, there would be no pretense of right to enforce its collection. And this section, following the earlier statute, makes provision for the revenue of that fund, simply omitting one source. It may be said that the section is unnecessary, because the constitution already makes the same provision for that fund. Conceding that, yet it would not follow that it might not be reënacted in a statute, or if so reënacted, that it was outside the scope of the title of the act. It may still be a mere provision for revenue, but it is not simply a restatement of the constitution. The constitution may grant that revenue to the annual fund, but this prescribes the limits of that fund. The constitution leaves the matter of other revenues with the legislature, and this section defines what the fund shall consist of. It is thus making provision for the revenues to be paid into the fund.

It is evident, considering § 4 and § 5 together, that the attention of the legislature was directed to this one-mill school tax, and that the intent was to do away with it. And in sustaining the legislature we are but carrying out the manifest intent of the law-making body.

Judgment will be entered in favor of the defendant for costs.

A concurring opinion was delivered by

VALENTINE, J.: In my opinion, § 4 and § 5, ch. 149, Laws of 1879, p. 270, work by implication a repeal of all prior enactments, providing for the levy of a one-mill tax for the state annual school fund. Counsel for the state seem to admit that all said prior enactments, except the one contained in § 1, art. 16, ch. 122, Laws of 1876, p. 291, have been re-

pealed; but they claim that the whole of that section still remains in force, and that a one-mill state school tax may still be levied under it. But has not that section (or so much thereof as provides for a one-mill school tax) also been repealed? That section is simply a continuation of § 76, ch. 92, Gen. Stat., p. 930, being copied *verbatim* therefrom; and said § 76 has been expressly repealed by said § 5 of the Laws of 1879. Said § 76 had never before been repealed. On the contrary, it was reënacted in said § 1, and was thereby continued in force, and not repealed. The act concerning the construction of statutes provides, among other things, that "the provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such provisions, and not as a new enactment." (Gen. Stat., p. 999.) Said § 1, (upon which counsel for the state wholly rely,) is therefore to be "construed" "not as a new enactment," but merely "as a continuation" of said § 76, which is now repealed. But this is not all: that provision of § 1 and § 76, authorizing the levy of a one-mill school tax, is obviously inconsistent with the provisions of said § 4, and therefore, as § 4 is the later enactment, said inconsistent provision must yield. Everybody knows that the later law must govern, and that it works, by implication, a repeal of all prior laws inconsistent with it. There can be no question as to what the legislature intended with regard to this subject. The legislature undoubtedly intended to abolish said one-mill school tax, and this we know from the statutes themselves; and when we know what the legislative intent is, we must follow it. Courts have no right to seek for pretexts to overturn the will of the legislature. Besides, the constitution makes it the duty of the legislature to "provide at each regular session for raising sufficient revenue to defray the current expenses of the state for two years." (See Const., art. 2, § 3.) And we must always presume that the legislature does its duty, until the contrary appears. We must presume that the legislature, at its last session, which was a "regular session," provided for raising all the revenue which it intended

that the state should raise, or which it deemed necessary for the state to raise. The legislature did provide for raising some revenue and some state revenue; it had the subject under consideration; and as it did not provide for raising any revenue by the levy of a one-mill state school tax, we must presume that it did not intend that any such revenue should be raised.

I have discussed this question so far upon the hypothesis that § 76 and § 1 would continue in force until repealed by the legislature. But would they? (See said § 3, art. 2, of the constitution, as it originally stood and as amended in 1875.) Several years have elapsed since said section § 76 was enacted, and two "regular sessions" of the legislature have been held, and over three years have elapsed since said § 1 was adopted. Could § 76 have remained in force for more than one year after its adoption? and could § 1 have remained in force longer than until the close of the next "regular session" of the legislature held (in the year 1877) after its adoption? or could it at most have remained in force for more than "two years" after its adoption? It is now more than three years since it was adopted, and two regular sessions of the legislature have been held in the meantime. Can it still be in force? I do not wish to answer any of these questions; but I propound them merely for this purpose: said § 1 is the only section under which it is claimed that said one-mill tax might be levied; and if it is not now in force for any reason, then said one-mill tax cannot be levied.

I suppose that an act concerning revenue, and to repeal all laws inconsistent therewith, such as ch. 149, Laws of 1879, is, may be legally passed as one act. But if not, then what becomes of said § 1, which is a part of a *voluminous act* containing *innumerable subjects*, which act expressly attempts to repeal "all acts and parts of acts inconsistent with" the same, and whose title does not mention *taxes*, or *assessments*, or *levy*, or *revenue*, or *money*, or *funds* of any kind, and does not mention repeal in any manner whatever? If said § 4 is void, then § 1 is also void for a stronger reason, and in any event,

said one-mill tax cannot be levied. I think, however, that said § 4, ch. 149, Laws of 1879, is valid; and therefore § 1, art. 16, ch. 122, Laws of 1876, with reference to said one-mill tax is void; for, being inconsistent with each other, they cannot both be valid.

I concur with my brother BREWER in the decision of this case.