No. 38,671

CHARLES ROONEY, d. b. a. Rooney Confection Service, *Appellant*, v. FRED HORN, DALE A. FISHER and C. I. MOYER, State Commission of Revenue and Taxation, and BERT E. MITCHNER, Director of Revenue and Taxation of the State of Kansas, *Appellees*.

(254 P. 2d 822)

Opinion filed March 7, 1953.

*Charles Rooney,* of Topeka, argued the cause and *Charles Rooney, Jr.,* was with him on the briefs for the appellant.

*Paul H. Edgar,* of Topeka, argued the cause and *Wilbur G. Leonard,* of Topeka, was with him on the briefs for the appellee.

*Payne H. Ratner, Ora D. McClellan, Louise Mattox, Payne H. Ratner, Jr., Keith Sanborn, Gerald L. Michaud, Russell Cranmer, Dale B. Stinson, Jr.,* and *Starr Calvert, Jr.,* all of Wichita, were on the briefs as *amicus curiae.*

The opinion of the court was delivered by

SMITH, J.: This was an action pursuant to G. S. 1949, 79-3602, to determine whether the appellant is required to pay a two percent tax on the gross receipts from the sale of five-cent candy bars through vending machines. The director of revenue made an assessment for the months from December, 1948, through May, 1949. The appellant appealed to the commission, where the liability was fixed at $839.21. The appellant then appealed to the district court. That court upheld the findings of the commission— hence this appeal.

There was an agreed statement of facts as follows:

"This is an appeal from an order of the State Tax Commission assessing the above appellant sales tax on merchandise sold through the medium of five-cent Candy Vending Machines, the order being based under 79-3601 and following paragraph pertinent thereto of the 1947 Supplement.

"The facts essential to the Court in determining this matter are hereinafter set out and agreed upon by the parties as the essential facts.

"1. The Appellant d/b/a The Rooney Confection Service is the owner of a large number of candy vending machines. These machines are placed by the appellant in factories, industrial plants, schools, hospitals and places where either employees or the public have access to insufficient numbers to make the operation successful and profitable.

"2. The machines are regularly serviced by the appellant's employees.

"3. The candy, gum and nuts vended through the machines are purchased wholesale by the appellant and come in packages which bear the price tag (5¢). The appellant is a registered retailer and each sale is a retail sale.

"4. The person desiring to make the purchase through the machine makes his selection of the candy, gum or nuts he desires, inserts a nickel in the slot, pulls the lever and receives the five-cent item of his selection. The machine vends no other article in price, other than five cents, nor will it make change.

"6. The machine accepts no coin other than a nickel.

"7. The customer, if he should desire more than one article, must repeat the procedure as above outlined. In other language, irrespective of how many five cent items he would purchase, each individual purchase is a separate and distinct transaction.

"It is further stipulated and agreed that the Court take judicial notice that since the 1939 Legislature abolished the mill token, and there is no medium of exchange for sales tax in fractions of one cent."

The trial court found:

"The Court further, and specifically, finds that the order of the State Commission of Revenue and Taxation, and the Director of Revenue, was not unreasonable, arbitrary, or capricious, and neither are the rules and regulations upon which the order is based unreasonable, arbitrary, or capricious; that the order of the State Commission of Revenue and Taxation, dated September 26, 1949, should be, and the same is hereby, sustained."

Judgment was entered against appellant and in favor of the commission for $839.21.

The specifications of error are that the trial court erred in entering judgment against the appellant and in making findings that under G. S. 1949, 79-3619, and the rules and regulations of the commission separate and individual five-cent candy bar sales are subject to the two percent sales tax.

The argument takes us to an examination of the sales tax from its inception. The act was enacted by the legislature in 1937. As enacted, provision was made for the payment of the tax on five-cent sales by the use of tokens. Section 19 of the Laws of 1937, Chapter 374, provided:

"For the purposes of more efficiently securing the payment, collection and accounting for the taxes provided for under this act, the commission shall

provide for the issuance of metal tokens or script to enable purchasers to pay and retailers to collect the tax when the tax amounts to a fractional part of a cent, insofar as the same can be done. Said metal tokens shall be made from Kansas zinc, if practicable, and shall be manufactured by the superintendent of the Kansas state industrial reformatory at the reformatory; script, if used, shall be printed by the superintendent of the Kansas state industrial reformatory at the reformatory."

The legislature in 1939 repealed this section and enacted in lieu thereof G. S. 1949, 79-3619. This section provides as follows:

"For the purposes of more efficiently securing the payment, collection and accounting for the taxes provided for under this act, agreements between competing retailers or the adoption of appropriate rules and regulations by organizations or associations of retailers to provide uniform methods for adding and collecting the full amount of the tax imposed by this act, or an amount equal as nearly as possible or practicable to the average equivalent thereof, and which do not involve price-fixing agreements otherwise unlawful, and which shall first have the approval of the director of revenue, are expressly authorized and shall be held not to be in violation of any antitrust laws of this state. It shall be the duty of the director of revenue to co-operate with such retailers, organizations, or associations in formulating such agreements, rules and regulations. The director of revenue shall have the power to adopt and promulgate rules and regulations for adding and collecting such tax, or an amount equal as nearly as possible or practicable to the average equivalent thereof, by providing different methods applying uniformly to retailers within the same general classification for the purpose of enabling such retailers to add and collect as far as practicable, the amount of such tax. (L. 1937, ch. 374; §19; L. 1939, ch. 332. §1; July 1.)"

Pursuant to the above statute the commission issued rules and regulations in part as follows:

"RETAILER LIABLE FOR TAX. The retailer of tangible personal property, or the person selling or furnishing any of the other things or services taxable under the provisions of the act is liable and responsible to the state for the entire amount of the two per cent (2%) tax payable on his taxable gross receipts.

"Tax to be passed on. The retailer is required to pass on to the consumer or user the full amount of the tax imposed by this act, or an amount equal as nearly as possible or practicable to the average equivalent thereof.

"Unlawful advertising. The law provides that it shall be a misdemeanor, subject to a fine or imprisonment or both, 'To advertise or hold out, or state to the public, or to any consumer, directly or indirectly, that the tax, or any part thereof, imposed by this act will be assumed or absorbed by the retailer, or that it will not be considered as an element in the price to the consumer, or if added, that it, or any part thereof, will be refunded.' (Authorized by G. S. 1945 Supp., 74-2411, 79-3603, 79-3604, 79-3605, and 79-3618, as amended. Compiled January 1, 1948.)"

"Bracket System For Adding and Collecting Sales Tax.

"In hearings had with various retailers and organizations and associations of retailers, it has been recommended that there be adopted and there is hereby ordered, approved, adopted, made and promulgated, to become effective and to be in force and effect on and after July 6, 1939, the following bracket system for the purpose aforesaid and for adding and collecting the tax; said bracket system being as follows:

> "$0.01 to $0.14—No tax
> .15 to   .65—1¢ tax"

The token system was discontinued. It will be seen the bracket system made no provision for the retailer collecting any tax on sales under 15 cents in amount. The idea of the bracket system when it was put into effect was that while a retailer could not collect any tax on sales under 14 cents in amount, ordinarily he could and would on sales of fifteen cents and over collect one cent. Thus, on four separate fifteen-cent sales he collects four cents. These two features were believed to just about balance each other or result in some slight advantage to the retailer even though he paid two percent tax on his gross receipts. In the case of vending machines such as those operated by appellant the retailer has no means by which he can balance up since his sales are all for five cents. There are no tokens now so he cannot collect less than one cent and should he set up his machine to collect a one-cent tax on each sale he would be confronted by the provision that on sales from one cent to fourteen cents there shall be no tax.

We now examine the pertinent statutes, G. S. 1949, 79-3602, subpara $(d)$, provides in part:

"'Retailer' means a person regularly engaged in the business of selling tangible personal property at retail or furnishing electrical energy, gas, water, service or entertainment, known to the trade and public as such, and selling only to the user or consumer and not for resale."

Subpara (j) provides:

"The isolated or occasional sale of tangible personal property, service, substance or thing taxable hereunder by a person not engaged in such business does not constitute engaging in business, within the meaning of this act."

The tax is imposed by G. S. 1949, 79-3603. That section provides, in part, as follows:

"From and after June 1, 1937, for the privilege of engaging in the business of selling tangible personal property at retail in this state or rendering or furnishing any of the things or services taxable under this act, there is hereby

levied and there shall be collected and paid a tax as follows: (a) A tax at the rate of two percent upon the gross receipts received from the sale of tangible personal property at retail within this state;"

Appellant argues that when the legislature repealed the statute providing for the tokens and provided for substitution of the bracket system, which made it unlawful to collect any tax upon five-cent sales, and left in effect the provision that 'the tax levied hereunder shall be paid by the consumer' and made it the duty of the retailer to collect the tax, the effect was to free him from the obligation to pay a tax which the law makes it impossible for him to collect.

The position of appellees is that the tax is imposed upon the retailer for the privilege of doing business and is measured by his gross receipts. They argue the fact the statute declares the tax to be on the consumer has no bearing and the retailer is obliged to pay 2 percent of his gross receipts whether he can collect the total tax from the consumer or not.

G. S. 1949, 79-3603, contains in addition to the provisions already quoted a subparagraph (f) as follows:

"(f) a tax at the rate of two percent upon the gross receipts from the operation of any coin operated amusement device, whether automatic or manually operated; for example, but not by way of limitation: Pinball machines, mechanical music machines and mechanical games."

Section 3 of chapter 374 of the Session Laws of 1937, the original sales tax act, did not contain any subparagraph (f) or any provision similar to it or of like import. There was no mention of coin operated machines.

By section 2 of chapter 463 of the Session Laws of 1947 a section (f) was added, which provided for the sales tax applying to any coin operated amusement device, whether automatic or manually operated; for example, but not by way of limitation: Pinball machines, mechanical music machines and mechanical games. This section is G. S. 1949, 79-3603.

As heretofore remarked in this opinion, these taxes were assessed from December, 1948, through May, 1949, while the above amendment was in effect. Clearly the machines of appellant are not "a coin operated amusement device."

By section 1 of chapter 497, the legislature of 1951 added to G. S. 1949, 79-3603, subparagraph (f) the words "and/or any merchandise vending machine." This was the first time a merchandise vending machine was referred to in the sales tax act. Thus

for the first time in 1951 did the legislature clearly indicate its intention to levy a tax of two percent upon the gross receipts from the operation of merchandise vending machines.

A careful examination of G. S. 1951 Supp., 79-3603, will be helpful. The legislature in 1937 with meticulous care included every category of business upon which it wished to levy the tax. Subparagraph (*a*) levied the tax on the sale of tangible personal property; (*b*) upon telegraph and telephone service; (*c*) sale of gas, water, electricity and heat; (*d*) upon the gross receipts of eating places generally; (*e*) amusement places. As we have noted, in 1947, pinball machines were added and in 1951 merchandise vending machines. Had the legislature by the original act or the amendment of 1947 intended to include merchandise vending machines it could have easily done so either in the original act or the amendment of 1947. The fact that it did not do so is persuasive that it was not the intention to include them. Certainly they were not included in subparagraph (*a*) which levied the tax on the sale of tangible personal property since the legislature on two subsequent occasions dealt with coin operated machines.

In the interpretation of a statute where words of definite meaning are used they exclude the use of words of a general meaning. Certainly the legislature in this case, as has been pointed out, covered the field of businesses upon which it intended a tax of two percent of the gross receipts to be levied. The maxim *"expressio unius est exclusio alterius"* applies. (See *State, ex rel., v. Ewing,* 22 Kan. 708; *K. P. Rly. Co. v. Wood,* 24 Kan. 619; *Snavely v. Buggy Co.,* 36 Kan. 106, 12 Pac. 522; *Beebe v. Doster,* 36 Kan. 666, 14 Pac. 150; *Sutherland Statutory Construction,* Vol. 2, 3d ed., §4915, p. 412; and *Commerce Trust Co. v. Paulen,* 126 Kan. 777, 271 Pac. 388.)

A detailed statement of the matters this court will consider in interpreting a statute is set out in *Natural Gas Pipeline Co. v. Commission of Revenue & Taxation,* 163 Kan. 458, 183 P. 2d 234. We have applied these rules to this statute and the general knowledge of the facts and circumstances surrounding the enactment and development of our sales tax act and we are forced to conclude that the legislature did not until 1951 intend that the operator of a coin operated merchandise vending machine should pay the 2 percent sales tax upon the gross receipts thereof.

The judgment of the trial court is reversed with directions to enter judgment for the plaintiff.