No. 47,171

In the Matter of the Application of Gene M. Olander, County Attorney of Shawnee County, Kansas, by Lawrence P. Ireland, Assistant County Attorney of Shawnee County, Kansas, for an Order Authorizing Eavesdropping Pursuant to K. S. A. 1972 Supp. 22-2513.

STATE OF KANSAS, *Appellant*, v. KELLY STEIN and FRED GALLION, *Respondents.*

(515 P. 2d 1211)

Opinion filed November 3, 1973.

*Gene M. Olander*, district attorney, argued the cause, and *Vern Miller*, attorney general, and *Lawrence P. Ireland*, assistant district attorney, were with him on the brief for the appellant.

*John C. Humpage*, of Topeka, argued the cause, and *Robert L. Roberts*, also of Topeka, was with him on the brief for the respondent.

The opinion of the court was delivered by

FONTRON, J.: The defendant, E. K. Stein, to whom we shall refer either by name or as petitioner, is presently charged with commercial gambling in violation of K. S. A. 1972 Supp. 21-4304. The charges were filed January 1, 1973, but before a preliminary examination could be held Mr. Stein filed a motion in the Shawnee

District Court to suppress all evidence derived through an order authorizing eavesdropping issued by the Honorable Michael A. Barbara pursuant to K. S. A. 1972 Supp. 22-2513.

After hearing the motion, Judge Barbara overruled it on March 6, 1973. However, on a motion for rehearing the judge reversed his position, and on April 19th he entered judgment suppressing the evidence obtained through the eavesdrop order. The state appealed from Judge Barbara's order under the authority of K. S. A. 1972 Supp. 22-3603.

Background facts are as follows: On December 21, 1972, Lawrence P. Ireland, then assistant county attorney of Shawnee County, applied to Judge Barbara for an order authorizing eavesdropping. The application purported to be made by Gene Olander, the county attorney, by Mr. Ireland, but was signed, verified and presented by Ireland.

The record reflects that when Stein's motion to suppress was heard on February 28, 1973, the state offered evidence by Ireland that he filed the application at the express order and with the consent of Olander who was absent from the county at the time, being then engaged in prosecuting a criminal action in Johnson County. Stein apparently did not dispute this evidence and the trial court found the application was made in the county attorney's name but because of his absence from the county it was signed by an assistant who had express authority to file the same.

K. S. A. 1972 Supp. 22-2513 relates to and governs the issuance of orders authorizing eavesdropping. The statute reads in part:

"An *ex parte* order authorizing eavesdropping, as defined in K. S. A. 1969 Supp. 21-4001, may be issued by any justice of the supreme court or by any district judge as herein provided.

"(1) The attorney general, an assistant attorney general or a county attorney may make an application to any of the above specified magistrates for an order authorized [sic] eavesdropping when the information to be obtained may provide evidence of the commission of any of the following offenses:

. . . . . . . . . . .

"(g) Commercial gambling;

. . . . . . . . . . .

"(2) The magistrate to whom application for an order authorizing eavesdropping is addressed shall examine, under oath, the applicant and any other witness he may produce and shall satisfy himself that there are reasonable grounds and probable cause therefor before granting such application and that there are no other means available for obtaining the evidence and that

the evidence to be obtained is essential to the solution or prevention of the crime or may assist in the prosecution thereof. . . ."

In sustaining petitioner's motion to suppress the evidence obtained through the eavesdrop order, the trial court declined to rule on whether the county attorney might delegate his authority to apply for the order to an assistant county attorney. Instead, the court based its ruling on the premise that the record of the proceedings had when the order was issued must have contained a showing that Mr. Olander, the statutory designee, had authorized the assistant county attorney to make the application. Because the record of the December 21st hearing, at which the eavesdrop order was issued, was completely void of any showing that Olander was not available, or that he had approved, consented to, or authorized Ireland to apply for the order, the trial court felt it "must find there was no delegation, no valid showing at this time." In coming to this conclusion the court rejected the state's contention that a showing of authority might be supplied by evidence adduced at a hearing held after the order was issued.

On appeal, the state stoutly urges that Mr. Olander's delegation of authority to Mr. Ireland to apply for the eavesdrop order need not appear in the record of the proceedings at which the order was obtained, but that evidence of that authority may be presented at a later hearing—as was done in this case. Mr. Stein, quite understandably, comes up with a contrary view. While we have been cited to considerable federal authority in this area, we are not required to determine the question here, for our decision must be premised on our own statute.

We have previously quoted pertinent portions of our statute. It recites that the attorney general, an assistant attorney general or a county attorney may apply for an order authorizing eavesdropping. Conspicuously missing from the list of statutory designees is an *assistant county attorney*. The petitioner correctly points out that an *assistant attorney general* is specifically included as one of the officers authorized to apply for an order, while there is no provision in the statute authorizing an *assistant county attorney* to do so. The necessary implication, so the argument goes, is that the legislature, by including an assistant attorney general among the authorized designees but omitting therefrom an assistant county attorney, expressed a clear intent to exclude the latter from the class of officers authorized to apply for an eavesdropping order.

One of the more common rules of statutory interpretation is that expressed in the Latin maxim *expressio unius est exclusio alterius, i. e.,* the mention or inclusion of one thing implies the exclusion of another. This rule may be applied to assist in determining actual legislative intent which is not otherwise manifest, although the maxim should not be employed to override or defeat a clearly contrary legislative intention. (*Commerce Trust Co. v. Paulen,* 126 Kan. 777, 271 Pac. 388; *Rooney v. Horn,* 174 Kan. 11, 254 P. 2d 322; 50 Am. Jur., Statutes, §§ 244-246, pp. 238-241.)

Mr. Olander, counsel for the state, frankly concedes that the decision to apply for the order in this case was within his competence, alone, but he argues that once having made the decision he could then delegate or authorize his assistant to make the application. We are of the opinion, however, that the statute is intended to limit strictly the class of persons who may apply for an order permitting electronic surveillance, and that an assistant county attorney does not come within the class designated by the Kansas Legislature.

No area of the law is more sensitive than that of electronic surveillance, since such activity intrudes into the very heart of personal privacy. Thus it is that legislative assemblies, including the Congress, have carefully restricted the right to apply for the use of electronic bugging devices to a very select coterie of public officers. Federal magistrates are fond of citing language excerpted from Senate Report No. 1097, 1968 U. S. Code Cong. & Admin. News, p. 2185, in explaining the legislative thinking which has undergirded the surveillance provisions in Title III of the Omnibus Crime Control and Safe Streets Act of 1968. (18 U. S. C. A. § 2510 *et seq.*) As to § 2516 (1), which pertains to the issuance of federal orders on application of highly placed government officials, the Senate Report reads:

". . . This provision centralizes in a publicly responsible official subject to the political process the formulation of law enforcement policy on the use of electronic surveillance techniques. Centralization will avoid the possibility that divergent practices might develop. Should abuses occur, the lines of responsibility lead to an identifiable person. This provision in itself should go a long way toward guaranteeing that no abuses will happen."

This passage of prose, although primarily found in federal cases arising under the federal surveillance statute, (*United States v. Robinson,* 468 F. 2d 189; *United States v. Narducci,* 341 F. Supp.

1107), has been quoted in state decisions, as well. See, for example, *State v. Frink,* _____ Minn. _____, 206 N. W. 2d 664; *State v. Cocuzza,* 123 N. J. Super. 14, 301 A. 2d 204, even though neither of these state decisions is factually in point.

As we have heretofore indicated, many of the decisions dealing with applications for permission to conduct electronic surveillance will be found in the federal domain. The governing statute is U. S. C. A. § 2516, to which reference has previously been made. Subsection (1) relates to the procedure which must be followed in obtaining an order from a federal court. The section reads in relevant part:

"(1) The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made  .  .  ."

It may be noted in passing that this language differs in some notable respects from that contained in the Kansas statute.

Section 2516 (2) mandates minimum guidelines to be observed in applications for interception orders which are addressed to state judges. This section provides:

"(2) The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire or oral communications, may apply to such judge for, and such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute an order authorizing, or approving the interception of wire or oral communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made.  .  .  ."

The limitations set by the federal statute are to be observed by state authorities, but we do not understand that a state is prohibited from imposing even more restrictive requirements than are set out in the federal law.

In *United States v. Tortorello,* 480 F. 2d 764, a case on which the state places great reliance, the federal court, after calling attention to the provision that the state's "principal prosecuting attorney" or "the principal prosecuting attorney of any political subdivision thereof" may apply for an interception order, said: ".  .

We find nothing in that provision to require the personal appearance of the 'principal prosecuting attorney' before the issuing state judge." However, the court went on to say: "The Act of course does not preclude a state from requiring its principal prosecuting officers to appear personally before the issuing judge. . . ." (p. 777.)

In this connection we believe what the Supreme Court of Minnesota said in *State v. Frink*, supra, is pertinent:

". . . If Congress had intended to permit an assistant county attorney to apply for an order authorizing an electronic surveillance, it had only to follow 18 U. S. C. A. § 2516 (1), which expressly designates assistant attorneys general as qualified to exercise such authority." (p. 674.)

The Kansas statute authorizes the county attorney, not his assistant, to apply for an eavesdrop order. Furthermore, the statute requires that the magistrate to whom the application is presented shall examine, on oath, the applicant and any other witnesses he may produce. Construing these provisions strictly, as we must where personal privacy is endangered, we cannot say that Mr. Ireland, as the assistant county attorney, was within the purview of the statute.

We affirm the action of the trial court in suppressing the evidence obtained through the eavesdrop order and it is so ordered.

FATZER, C. J., dissenting: I must respectfully dissent from the overly strict construction which the majority of the court would place on K. S. A. 1972 Supp. 22-2513 insofar as it designates who may make application for an order authorizing eavesdropping. The statute provides the application may be made by "the attorney general, an assistant attorney general or a county attorney." The majority opinion would prohibit the making of such application by a deputy or assistant county attorney, even though the county attorney is absent from the county.

A brief prefatory comment regarding the complex judicial and legislative history reflected in the statutory language of K. S. A. 1972 Supp. 22-2513 appears to be in order. For many years the United States Supreme Court held wiretapping to be a federal crime (Fed. Comm. Act § 605, 47 U. S. C. § 605), whether performed by state or federal officials. That court declined to require state courts to exclude evidence so obtained. (*Benanti v. United States*, 355 U. S. 96, 2 L. Ed. 2d 126, 78 S. Ct. 155; *Schwartz v. Texas*, 344

U. S. 199, 97 L. Ed. 231, 73 S. Ct. 232.) Accordingly, several states adopted relatively simple legislation which permitted eavesdropping by and upon application of various law enforcement officials. Such legislation was held to be a violation of the Fourth and Fourteenth Amendments, and invalid in *Berger v. New York*, 388 U. S. 41, 18 L. Ed. 2d 1040, 87 S. Ct. 1873.) Subsequently *Katz v. United States*, 389 U. S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507, abrogated the impression conveyed in *Berger*, supra, that eavesdropping was constitutionally impermissible under any circumstances.

In 1968, the United States Supreme Court imposed the exclusionary rule upon the several states as to evidence obtained by wiretapping which violated federal law. (*Lee v. Florida*, 392 U. S. 378, 20 L. Ed. 2d 1166, 88 S. Ct. 2096.) Congress responded to this decision by altering the law in the Omnibus Crime Control and Safe Streets Act of 1968 ([Ch. 119, §§ 2510-2520], 18 U. S. C. 2510 *et seq.*) Federal courts have repeatedly sustained the constitutionality of this Act. (See *United States v. Tortorello*, 480 F. 2d 764, footnote 6, 774.) That Act, among other things, exempts states from the operation of federal penal provisions, and abates the operation of the exclusionary rule upon state courts with respect to eavesdropping and evidence obtained thereby. Those exemptions are tempered by the requirement that the state establish procedures for eavesdropping which conform with the detailed requirements and restrictions contained in the Act.

Section 2516 (2), as set out in the majority opinion, provides that a state's "principal prosecuting attorney" or the "principal prosecuting attorney of any political subdivision thereof . . . may apply" for an eavesdropping order. It is against this background that K. S. A. 1972 Supp. 22-2513 was enacted. The language of the statute clearly indicates the Legislature was cognizant of and sought to comply with announced judicial and congressional requirements. The majority of this court now construes the punctilio requirement as to who may make application for an intercept order in a manner that is contrary to prevailing judicial construction. In *United States v. Tortorello*, supra, the United States Court of Appeals for the Second Circuit was confronted with the identical contention as in the case at bar. That court held an application by an assistant district attorney was permissible under the New York statute after which our statute was patterned. Its rationale was the objectives of both the federal and state statutes would be effectively retained

even though an assistant district attorney applied for the intercept order.

The language of K. S. A. 1972 Supp. 22-2513 expressly recognizes both the announced constitutional limitations upon and statutory requirements for lawful eavesdropping in conjunction with criminal investigations. Our statute requires a judicial order authorizing eavesdropping may issue only upon a showing of probable cause to believe that such activity may provide evidence of the commission of one of the enumerated crimes. Objective and independent approval of such activity by the judiciary is mandated by our statute. Moreover, Section 22-2513 is permeated with numerous requirements which reiterate established constitutional safeguards. While a high standard is demanded by our statute to insure a citizen's right to privacy, I submit the critical safeguard is not whether a county attorney or an assistant county attorney makes application, but rather whether the person seeking the eavesdropping order has the quantum of probable cause required. I do not wish to be understood as saying the other detailed requirements of our statute are meaningless—clearly they are not. Those requirements prohibit the infection of constitutional infirmities.

The majority opinion does not advance any additional constitutional safeguards. I am unable to comprehend that permitting a delegated assistant county attorney to make application obviates the import of our statute or lessens constitutional safeguards contained therein. The majority opinion places an unnecessary burden upon our county attorneys, and in so doing totally disregards the practical realities of the day.

It would appear the narrow interpretation placed on the statute by the majority would prevent district attorneys now created and existing in the four larger populated counties of the state from making an application for an order authorizing eavesdropping. It would leave little to the imagination that this would be contrary to the intention of the Legislature in providing for and directing the efficient law enforcement in our larger populated centers. The larger counties are where the need is more likely to exist than in the smaller or rural areas of the state. Additionally, Mr. Ireland, as an attorney, was presumed to have authority to appear in court as assistant district attorney, until the contrary is shown. (*O'Neill v. Douthitt,* 39 Kan. 316, 18 Pac. 199; *Newsome v. Anderson,* 164 Kan. 132, 187 P. 2d 495.)

Accordingly, this court should have considered the delegation question presented in this appeal, and following that consideration, reversed the judgment suppressing the evidence in question.

SCHROEDER, J., joins in the foregoing dissenting opinion.